## CHAMBERS, *vs.* KING & TUNSTALL.

Where there is a special contract in force, a party cannot waive the contract and proceed upon a *quantum meruit.*

APPEAL from St. Louis Court of Common Pleas.

DRAKE *and* RANNELLS, *for Appellant.*

1. The court below erred in overruling the first instruction asked by the defendant, Chambers', counsel. No rule of law is better settled than that embodied in that instruction, viz., that when there is a written agreement, or indeed any special agreement, the party must recover on that, and cannot waive it and resort to a *quantum meruit*, or implied assumpsit.— Champlin *vs.* Butler, 18 Johns. Reports, 169; Munford *vs.* McPherson, 1 *Ibid.*, 414; 3 Mo. Rep., 366.

2. The second instruction, from the want of evidence to sustain it, was perhaps properly overruled.

· 3. The court below. erred in'overruling the motion for a new trial. The verdict was clearly against the evidence in the cause, and whenever the jury have clearly erred and the court refuses a new trial, it is error.— 4 Mo. Rep., 80.

It is error when the evidence *strongly* preponderates against the verdict.— 3 Mo. Rep., Singleton *vs.* Mann, and 6 Mo. Rep., 61.

Poʟᴋ, *for Appellee.*

The St. Louis Court of Common Pleas committed no error in this case by refusing a new trial.

1. Because the court did not err in refusing said instructions, as they are not according to law, and nothing in the case to warrant the giving of them.

2. The jury did not err in finding their verdict from the evidence.

The Supreme Court will not disturb the verdict of juries, except it be a flagrant case, which would justify their interference.— See the case of *Lackey vs.* Lane and McCabe, and the authorities there cited, 7 Mo. Reports, 220, which decision was made at September term, 1841, in the third judicial district at St. Louis.

Nᴀᴘᴛᴏɴ, *Judge, delivered the opinion of the Court.*

King & Tunstall sued the appellant, before a justice of the peace, on an account for professional services as attorneys at law, in a suit between appellant and the Union Fire Engine Company, which account was filed before the justice, and claimed fifty dollars. The result of the trial before the justice was a verdict and judgment for appellant, from which King & Tunstall appealed to the Court of Common Pleas, where, on a trial *de novo*, they obtained a verdict and judgment for thirty dollars.

The appellant applied for a new trial in the Court of Common Pleas, but was unsuccessful, and took his bill of exceptions, in which is preserved all the testimony given on the trial, and the instructions refused by the court.

It appears from this bill of exceptions, that the plaintiffs had instituted and faithfully prosecuted, on behalf of defendant, an action before a justice of the peace, to recover possession of a lot in St. Louis occupied by the Union Fire company; that, on appeal to the Circuit Court, the same plaintiffs diligently attended to the interests of their client, the appellant here, and in the opinion of the witnesses, who were also attorneys, the services of plaintiffs were well worth fifty dollars. It seemed also that the appellant succeeded ultimately in obtaining possession of the lot in dispute between him and the fire company, and that the fire company held as tenants under him, and in his settlement with an agent of the company he was allowed $150, as the amount of fees paid to his lawyers, fifty of which the witness (who was the agent of the company) understood to have been paid to the appellees.

The appellant, on the trial, then produced on his part a paper, of which the following is the substance:—

"Sᴛ. Louɪs, Mo., *January* 9, 1838.

" Received of William Chambers twenty dollars, in full for our fee for the final recovery of the barn-lot formerly sold and conveyed by J. Colva to J. Braseau,

and now claimed by the said Chambers, and occupied by G. F. Strother and the Fire Engine Company; to obtain possession of which, we engage to proceed under the statute of forcible entry and detainer or by ejectment, and pursue the case to final issue. "KING & TUNSTALL."

The appellant also produced written receipts from A. L. Magenis and M. Blair, counsel, who had been employed in the same suit, from which it appeared, that one hundred dollars had been paid to Magenis, and thirty to Blair. These papers were all submitted to the jury without objection, and, together with the parol evidence relative to the value of the services of appellees, embraced all the evidence in the case.

Upon this state of facts, the court was called upon to say to the jury, that if they believed there was a written agreement between the parties, the plaintiffs must recover according to that agreement, and in no other way. This the court refused to do; the case went to the jury without instructions, and the verdict for the plaintiffs was for thirty dollars. We can perceive no ground upon which the verdict in this case can be permitted to stand. It is in direct opposition to the testimony. Whatever doubts might have arisen from the testimony of the agent of the fire company, must have been removed by the production of the receipts of Magenis, of Blair, and of King & Tunstall, which together proved that the sum claimed of the company had been actually paid by Chambers.

Whether these receipts were admissible or not, is no question here; they went to the jury without objection, and, indeed, appeared to constitute the evidence on which their verdict was found, for they allowed the appellees only thirty dollars of the fifty which they claimed, deducting, it is to be supposed, the twenty dollars for which Chambers produced their receipt. Had the court instructed the jury, as they should have done, that when there was a special contract, a party cannot proceed on a *quantum meruit*, this verdict would, in all probability, have been otherwise. The verdict should have been set aside.

Judgment reversed.